Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2001 | **DATE** | 2/22/2001 |
| **CASE TITLE** | Robert A. Scott, et al vs. MGI America, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the foregoing reasons, Lola and Nichol's Motion for Summary Judgment is GRANTED. Judgment is entered for Defendants Lola and Nichols and against Plaintiffs. (9-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | FEB 26 2001 | |
| | Notified counsel by telephone. | | date docketed | 32 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TP | courtroom deputy's initials | '01 FEB 23 PM 5:24 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

RUSSELL A. SCOTT and LAUREN ) 
SCOTT, )
          Plaintiffs, )
)   No. 00 C 2001
     v. )
)   HONORABLE JOHN A. NORDBERG
MGI AMERICA, INC., TRUMP INDIANA, )
INC., et al. )
          Defendants. )

## MEMORANDUM OPINION AND ORDER

**DOCKETED FEB 2 6 2001**

Plaintiffs Russell A. Scott and Lauren Scott filed a 6-count complaint against Defendants MGI America, Inc., d/b/a Total Marine Safety Center ("MGI"), Trump Indiana, Inc.("Trump"), Lola Crane Rental Company("Lola"), and Mark Nichols("Nichols"). The Plaintiffs seek redress for severe injuries allegedly suffered by Plaintiff Russell Scott while working on safety equipment for the ship Trump Casino. Plaintiffs raise two Jones Act claims against MGI, two Longshore and Harbor Worker's Compensation Act("LHWCA") claims against Trump, and two general maritime claims against Lola and Nichols. Before the court is Defendants Lola and Nichol's Motion for Summary Judgment.

## BACKGROUND

The essential facts relevant to this motion are largely undisputed. On April 4, 1997, Plaintiff Russell Scott ("Scott") suffered a work-related injury at Buffington Harbor, Indiana. Scott, then employed by MGI, was directing a life raft drill for the vessel Trump Casino. During the drill, a life raft was deployed from the Trump Casino via guy lines and then moved several hundred yards to a pier (*see* Nichols Dep. at 21; Scott Affidavit at ¶ 5). At the pier, employees of

32

MGI (*see* Scott Affidavit at ¶ 8), who were riding in the life raft, attached the life raft to the crane hook. The life raft was then to be lifted by a shore-based crane (located 10-20 feet from the water) owned by Defendant Lola and operated by Defendant Nichols. After being removed from the water, the life raft was to be inspected, repacked and returned to Trump Casino. However, difficulties arose. While being removed from the water and lifted onto the pier, the life raft struck Scott, who was standing on the pier, injuring him.

Defendants Lola and Nichols move for summary judgment on the grounds that there is no general admiralty jurisdiction over this action. Defendants maintain that the injury did not occur on a navigable water way and was not caused by a vessel or its appurtenances. Defendants argue that the injury to Scott occurred on land and was caused by a land-based crane.[1]

## LEGAL STANDARDS

### Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, the Court may grant summary judgment only if the factual record shows that no genuine issue of material fact exists and the movant is therefore entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Bratton v. Roadway Package System, Inc.*, 77 F.3d 168, 173 (7th Cir. 1996). The movant bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Hudson Insurance Co. v. City of Chicago Heights*, 48 F.3d 234, 237 (7th Cir. 1995). If the moving party meets this burden, the nonmovant must reply by setting forth specific facts demonstrating the existence of a

---

[1] In the alternative, Defendants argue that, to the extent Plaintiffs' pleadings can be construed as negligence claims under state law, they are barred by the statute of limitations. Plaintiffs have not responded to this argument, so the court will presume that they did not intend to raise state law claims.

genuine issue for trial. FED. R. CIV. P. 56(e); *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir.1995). In evaluating the motion, the court must draw all reasonable inferences from the record in the light most favorable to the nonmoving party. *Hamm v. Runyon*, 51 F.3d 721, 724 (7th Cir. 1995). A plaintiff's mere speculation, however, is not an adequate defense to a motion for summary judgment. *Patterson v. Chicago Association for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998). The central inquiry is whether the evidence is so one-sided that no reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

**<u>Admiralty</u>**

"The district courts shall have original jurisdiction, exclusive of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled...." 28 U.S.C. § 1333. "The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land...." 46 U.S.C. § 740.

A litigant who wishes to invoke federal admiralty jurisdiction must satisfy the requirements of both the location and connection with maritime activity tests. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). "A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* Two matters must be resolved under the connection to maritime activity test. First, the court "must 'assess the general features of the type of incident involved' ... to determine whether the incident has 'a potentially disruptive impact on maritime

3

commerce,'...." *Id.* (internal cites omitted). "Second, a court must determine whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Id.* (internal cites omitted).

For purposes of the location test, "appurtenances" attached to a vessel are deemed part of the vessel itself. *Id.* at 535. *See also Victory Carriers, Inc. v. Law*, 404 U.S. 202 (1971); *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 456 (5th Cir. 1999)(injury must be caused by a vessel). In *Victory Carriers*, a longshoreman was injured while driving a forklift owned by his employer and in the process of moving a load from the dock to a point where it could be loaded on to a ship by the ship's own equipment. 404 U.S. at 203. In concluding the claim was governed by state law, the Court noted that the injured longshoreman "was not injured by equipment that was part of the ship's usual gear or that was stored on board, the equipment that injured him was in no way attached to the ship, the forklift was not under the control of the ship or its crew, and the accident did not occur aboard ship or on the gangplank." *Id.* at 213-14.

## DISCUSSION

In essence, the Defendants claim that Plaintiffs cannot satisfy the location test,[2] in that the injury was not caused by a vessel or its appurtenance. Plaintiffs raise three arguments in opposition to the motion. First, they emphasize that the injury occurred during a Coast Guard mandated safety drill that was essential to the functioning of Trump Casino, and that the crane involved in the accident was essential to the ship's performance of the safety drill. Second, they

---

[2] An injury incurred during a lifeboat drill would appear to satisfy the connection test, as a lifeboat drill would likely be deemed a traditional maritime activity. *See generally Sisson v. Ruby*, 497 U.S. 358, 367 (1990) (storage and maintenance of a vessel).

4

argue that the crane was "attached" to Trump Casino via a contractual relationship. Third, they assert that Scott was actually struck by a life raft, an "appurtenance" to the vessel Trump Casino.

Plaintiffs' first two arguments can be dispensed with quickly. It appears undisputed that the crane was neither mounted on or in any way physically connected to the Trump Casino. That it was "essential" to the life raft drill does not transform the crane into the vessel's standard maritime equipment. It was simply a land-based piece of equipment that was contracted to do some work on the dock that particular day. As such, it is not an "appurtenance" to the vessel. Plaintiffs argument that the crane was "attached" to the vessel via a contractual relationship is similarly unavailing. We initially note that there appears to have been no contractual relationship between Lola/Nichols and Trump; the contract for the crane's services was between MGI and Lola/Nichols. (*See* Defendants' Supplemental Rule 56.1 Statement at ¶¶ 5-8; Scott Affidavit at ¶9; Scott Dep. at 65-66.) Further, the "contractual attachment" theory, for which Plaintiffs cite no authority, if accepted by this court, could expand admiralty jurisdiction beyond all rational bounds. For example, suppose Trump Casino contracted with a limousine service to transport guests to and from the ship. By Plaintiffs' reasoning, if one of the limousines had a routine traffic accident 20 miles inland, admiralty jurisdiction would apply because the limousine was attached to (became an appurtenance of) the ship via the contract. That is not the law.

Thus, the resolution of this motion comes down to Plaintiffs' third argument and two very narrow issues— is the life raft that struck Scott an "appurtenance" of the Trump Casino and did the vessel "cause" the injury in any meaningful sense.

We note initially that the life raft was part of the Trump Casino's standard, required equipment. However, at the time of the accident, the life raft was several hundred yards from the

vessel and under the control of third parties (MGI employees). As such, the life raft was not attached to the ship or being operated by the ship's crew, nor did the injury occur while it was being loaded on or unloaded from the ship. The Trump Casino appears to have been only peripherally involved at the time of the accident. *See generally Florio v. Olson*, 129 F.3d 678, 680 (1st Cir. 1997)(injury not caused by vessel because "the line that snapped was not attached to the ship or supplied by the ship"). There are cases which hold that a shipowner must provide a safe means of egress to/from the ship, so liability can attach for injuries incurred going from the main vessel to a servicing crewboat. *See, e.g., Massey v. Williams-McWilliams, Inc.*, 414 F.2d 675 (5th Cir. 1969), *cert. denied*, 396 U.S. 1037 (1970). However, even if we were to analogize a life raft to a crewboat, it would not help the Plaintiffs. Scott was not traveling to or from the ship on the life raft when he was injured.

Lastly, we're left with the question of when does a life raft cease to be an appurtenance to the ship? When it's hanging on the side of the vessel it would clearly be an appurtenance. Similarly, by analogy to cases addressing cargo containers and ship-mounted cranes, when the life raft is being lowered from or loaded onto the vessel it would be an appurtenance. The same result would be warranted when the life raft is deployed/maneuvered from the vessel via the guy lines. On the other extreme, after the life raft has been removed from the water, inspected, repackaged, and loaded on a truck to be driven back to the vessel, the answer would appear to be that the life raft is not (then) an appurtenance to the vessel. In that latter case, if someone carelessly knocked the repacked life raft off the truck and it fell and injured someone standing next to the truck in the parking lot, it would not to be an admiralty case.

6

In this case, Scott was injured while standing on the pier. The life raft which struck him was several hundred yards from Trump Casino and had been operated by his coworkers at MGI rather than crew members of the vessel. Moreover, the actual injury took place after the life raft had been lifted from the water by a land-based crane that had no attachment, contractual or otherwise, to the vessel. Under these facts, we must conclude there is no general admiralty jurisdiction.

## CONCLUSION

For the foregoing reasons, Lola and Nichol's Motion for Summary Judgment is GRANTED. Judgment is entered for Defendants Lola and Nichols and against Plaintiffs.

**ENTER:**

JOHN A. NORDBERG
Senior United States District Judge

DATED: February 22, 2001