Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 2001 | DATE | 2/27/2001 |
| CASE TITLE | Scott, et al vs. MGI America, Inc., et al | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the foregoing reasons, MGI's Motion to Dismiss GRANTED. (5-1)
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | FEB 27 2001 | |
| | Notified counsel by telephone. | | date docketed | 33 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| TP | courtroom deputy's initials | 01 FEB 27 PM 12: 41 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RUSSELL A. SCOTT and LAUREN SCOTT, | )<br>)<br>) |
| Plaintiffs, | )<br>) No. 00 C 2001 |
| v. | )<br>) HONORABLE JOHN A. NORDBERG |
| MGI AMERICA, INC., TRUMP INDIANA, INC., et al. | )<br>) |
| Defendants. | ) |

DOCKETED

FEB 2 7 2001

## MEMORANDUM OPINION AND ORDER

Plaintiffs Russell A. Scott and Lauren Scott filed a 6-count complaint against Defendants MGI America, Inc., d/b/a Total Marine Safety Center ("MGI"), Trump Indiana, Inc. ("Trump"), Lola Crane Rental Company ("Lola"), and Mark Nichols ("Nichols"). The Plaintiffs seek redress for severe injuries allegedly suffered by Plaintiff Russell Scott while working on safety equipment for the ship Trump Casino. Plaintiffs raise two Jones Act claims against MGI, two Longshore and Harbor Worker's Compensation Act ("LHWCA") claims against Trump, and two general maritime claims against Lola and Nichols. Before the court is Defendant MGI's Motion to Dismiss for lack of jurisdiction.

## BACKGROUND

The alleged facts are taken from the complaint and Plaintiff Russell Scott's affidavit. On April 4, 1997, Russell Scott ("Scott") suffered an injury at Buffington Harbor, Indiana. At the time of the injury, Scott, then employed by MGI, was directing a life raft drill for the vessel Trump Casino. During the drill, an inflatable buoyant apparatus("life raft") was deployed from the Trump Casino via guy lines and then navigated some distance to a pier. At the pier,

employees of MGI, who were riding in the life raft, attached the life raft to a crane hook. The life raft was then to be lifted by the shore-based crane, which was owned by Defendant Lola and operated by Defendant Nichols. After being removed from the water, the life raft was to be inspected, repacked and returned to Trump Casino. However, difficulties arose. While being removed from the water and lifted onto the pier, the life raft struck Scott, who was standing on the pier, injuring him.

Defendant maintains that there is no jurisdiction under the Jones Act because Scott is not a "seaman." Defendant maintains that Scott was a land-based employee, with no permanent assignment to the Trump Casino (or any other vessel), who was injured by a land-based crane. Plaintiffs respond that there is an issue of fact as to whether Scott was a "seaman" because: (1) for the year prior to the accident, Scott served vessels operating on navigable waters; (2) the majority of this time was spent "in support of vessel activity including time on board a marine vessel or its environs"; and (3) Scott was injured while conducting a required safety drill for the vessel Trump Casino. (Scott Affidavit at ¶¶ 3-12).

## LEGAL STANDARDS

### Motion to Dismiss

Evaluating the legal sufficiency of a plaintiff's factual allegations requires courts to adhere to a strict standard. A court may grant a motion to dismiss only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cushing v. City of Chicago*, 3 F.3d 1156, 1159 (7th Cir.1993)(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). When considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations in the complaint and view them, along with the reasonable inferences

2

to be drawn from them, in the light most favorable to the plaintiff. *Cornfield v. Consolidated High School District No. 230*, 991 F.2d 1316, 1324 (7th Cir.1993). However, the court need not accept as true conclusory legal allegations. *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 730 (7th Cir.1994). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test." *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The analysis can differ in a motion under Rule 12(b)(1). "Where evidence pertinent to subject matter jurisdiction has been submitted,...'the district court may properly look beyond the jurisdictional allegations of the complaint... to determine whether in fact subject matter jurisdiction exists.'" *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999) (internal cite omitted). In these circumstances, the complaint's allegation's presumption of correctness is eliminated, and the plaintiff has the burden to establish jurisdiction by competent proof. *Id.*; *NLFC, Inc., v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir.), *cert. denied*, 515 U.S. 1104 (1995).

**Jones Act**

"The Jones Act provides a cause of action in negligence for 'any seaman' injured 'in the course of his employment.'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995)(quoting 46 U.S.C. App. § 688(a)). "Jones Act coverage is confined to seaman, those workers who face regular exposure to the perils of the sea." *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 560 (1997) (internal citations omitted). To be a "seaman" under the Jones Act, the "employee's

3

duties must contribute to the function of the vessel or to the accomplishment of its mission," and, most importantly, the employee "must have a connection to a vessel in navigation (or an identifiable group of such vessels[1]) that is substantial in terms of both its duration and its nature." *Id.* at 554 (internal citations and quotations omitted).

As to the second prong, an employee who spends only a small fraction of his working time on board the vessel is essentially land-based and not a seaman. *Chandris*, 515 U.S. at 371. As a general rule of thumb, a "worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* See also *Papai*, 520 U.S. at 559-60 (sporadic or transitory connection of day laborer hired through hiring hall not enough); *Johnson v. Continental Grain Co.*, 58 F.3d 1232, 1235-6 (8th Cir. 1995) (welder that worked for series of unrelated vessels as assigned not "seaman"); *Palmer v. Fayard Moving & Transportation Corp.*, 930 F.2d 437, 439 (5th Cir. 1991) (land-based public relations officer who spent 19% of work hours on board vessel not "seaman") *But see Foulk v. Donjon Marine Company, Inc.*, 144 F.3d 252, 259-60 (3rd Cir. 1998) (ten day assignment can be sufficient duration to foreclose summary judgment if worker's duties significant enough); *Boy Scouts of America v. Graham*, 86 F.3d 861, 864-66 (9th Cir. 1996) (duration of time on vessel standing alone not enough to determine "seaman" status(10 day cruise)).

"Land-based maritime workers do not become seaman because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore." *Chandris*, 515 U.S. at 361.

---

[1]The identifiable group of vessels must be "a finite group of vessels under common ownership or control." *Papai*, 520 U.S. at 556.

4

Moreover, a ship repairman or similar worker can be deemed a seaman if he has the appropriate connection to a vessel. *Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 89 (1991). Generally, whether one is a seaman is a jury question, unless reasonable minds considering the correct legal standard could not differ in opinion. *McDermott International, Inc. v. Wilander*, 498 U.S. 337, 356 (1991).

## DISCUSSION

Our review of the jurisdictional claim is complicated by two issues. First, the issue is intertwined with the "merits" question of whether Scott is a "seaman" entitled to relief. Second, neither side seems to have fully addressed the dispositive issues, which are the nature and duration of Scott's relationship to the vessel Trump Casino.

Contrary to Defendant's position, a "permanent" relationship to a vessel is not required to be a "seaman" under the Jones Act; the *Papai* decision teaches that the relationship need only be of sufficient "duration." 520 U.S. at 554. Moreover, the "duration" concept seems to have been interpreted somewhat liberally by some of the courts of appeals. *See, e.g., Foulk*, 144 F.3d at 259-60 (10 days). In addition, that Scott was injured on land is not dispositive. A seaman who is fortuitously injured on shore in the service of his vessel does not lose the protection of the Jones Act. *See generally Chandris*, 515 U.S. at 361. Defendant's most significant points were presented by its President, Martin Stewart, who stated in his affidavit that: (1) Scott was based at the Mokena, Illinois office; (2) Scott worked out of the Mokena office on a daily basis; and (3) Scott had no permanent connection to nor was ever based upon the Trump Casino. (Defendant's Memorandum in Support, Exhibit 4.) This evidence directly raises the question of whether this

5

court has jurisdiction, as the statements in the affidavit indicate that the Jones Act does not apply because Plaintiff had an inadequate connection to the vessel.

In their response, Plaintiffs focus on the first prong of the *Chandris/Papai* test, that Scott contributed to the function of the Trump Casino. In particular, that Scott was injured while assisting with a Coast Guard mandated safety drill for Trump Casino. Unfortunately, Scott presents nothing of consequence on the second prong -- that his connection to the vessel was substantial in both its nature and duration.

His affidavit does state that he spent most of the previous twelve months in the service of various vessels and spent most of that time in "support of vessel activity including time on board a marine vessel or its environs." (Scott Affidavit at ¶3.) There are two fatal shortcomings to this statement. First, significantly absent is any reference to Trump Casino. That Scott may have worked on other unrelated vessels does create any ties to Trump Casino. Moreover, a fair reading of Scott's affidavit does not even imply that he was ever aboard or involved with the Trump Casino at any time prior to the accident.[2] Further, contrary to the remark in his brief about the relationship with the vessel being potentially "continuing" (*see* Plaintiffs' Brief at 9), there is no evidence showing or implying that Scott anticipated further duty in the service of Trump Casino after the lifeboat drill. Second, his rather vague statements about being "in support" of vessels that included time "on board" are a far cry from establishing a significant connection, in nature and duration, to these unspecified vessels. "Support" is undefined. As the vessels were gambling boats, totaling up the evening's receipts on shore would "support" their

---

[2] In addition, the Ellebracht affidavit presented by the Plaintiffs states that MGI was hired by Trump to design and install lifesaving gear prior to April 4, 1997(Ellebracht Affidavit at ¶ 5), but does not say when or indicate if Scott was involved with the vessel before April 4, 1997.

mission, but that would hardly be a seaman's task. Further, the statement gives no inkling as to the amount of time Scott spent on board the vessels in navigation. As to the 30% rule of thumb referred to in *Chandris*, there is nothing in Plaintiffs' submissions to give the court any indication that Scott met, or even approached, that threshold.

In sum, while we are not unmindful of the undeveloped state of the record associated with this motion to dismiss and the fact that the issue of whether a plaintiff is a "seaman" under the Jones Act is often a jury question, we must conclude that Defendant is entitled to prevail. Plaintiff has not only failed to present evidence that we have jurisdiction or raise an issue of fact as to whether we have jurisdiction, but also failed to make any allegations of facts that would arguably establish jurisdiction.

## CONCLUSION

For the foregoing reasons, MGI's Motion to Dismiss is GRANTED.

ENTER:

JOHN A. NORDBERG
Senior United States District Judge

DATED: Feb 26, 2001